*442 In both these cases, which turned on the same queetion, and on which the two chancellors had given differ-Cj^ opinions, there were appeals, which were brought and argued together in the court of appeals, present chancellors Besaussure, Gaillard, Waties, James and Thompson.
Mr. Miller and Mr. Felder, argued to reverse judge James'1 decree, and to affirm judge Waties’ decree. That the laws make a radical distinction between legitimate and illegitimate children, who are held to be incapable of inheriting veal estate, or of taking personal estate, under the statutes of distribution. The property of the father shall rather escheat than go to illegitimate children, and this is a constant operating disqualification, effective in every case where it applies, whether in the particular case the law under consideration speaks of illegitimacy or not. . The common law, and the law abolishing the rights of primogeniture and for the more equal division of intestates’ estates, always have legitimate children in contemplation, in all their regulations. The laws never contemplate illegitimate children but as objects incapable of taking, and our statutes have superad (led disabilities. For a father of a bastard, if he lias a wife and child living, is precluded from devising or bequeathing to such bastard child more than a fourth part of his estate •, and without such bequest he would take nothing.
If the general words of our act of 1791, regulating the descent of real estate, and the distribution of per > pona!, are permitted to include bastard children, and to allow them to take in any case, then they may as well come in and take equally where there are legitimate children, as where there are none but collateral relations. The civil law, properly understood, does not af - fect this question. When it speaks of children, it means legitimate children. — See 1 Domat. 569, 646, and l Williams, 49.
Mr. Starke and Col. Blanding, argued in support of judge James’ decree, and to reverse judge Waties’ decree.
*443 It is in the power of the court to follow the civil law rule on this subject, and that is the most consistent with reason and humanity, and is not productive of any immorality. There is no certainty as to tké putative father, but there is perfect certainty as to the mother.
There are cases of great hardship under the old common law of excluding illegitimates. The circumstances in the case of Barwick, brought up by appeal from Camden, are peculiarly hard. A mother who had acquired some property, gave part of it to her illegitimate son. He died leaving neither wife nor child. Shall the mo» ther ho excluded from taking, and shall the .property es» cheat ? This would he peculiarly cruel.
The statute of 1791, enacts generally, that the property of an intestate shall go to the wife and ahildren, and in default of these to other near relations. It uses general words, and does not distinguish between legitimate and illegitimate. The. broad words used will comprehend both. — See 6 Bacon, 386, for the rules of' construction of statutes.
Illegitimate children are within the provisions of the restraining marriage act in England, tinder the general denomination of children.
The rigor of common law rules is not imperatively yoked on us. The old acts establishing and regulating our courts of equity, direct and authorize it to follow the rules and regulations of the court of chancery in England, and that court resorts to the civil law rules, and breaks in upon the common law rules, when general convenience requires it. The civil law rule, admits bastards to inherit from the mother — Cooper’s Just. 215 5 and as from the uncertainty of the putative father, an illegitimate cannot have any agnates, or paternal relations, the coguates or maternal relations, are let in to inherit the property of an illegitimate intestate.' — Cooper’s Justinian, 217.
Bastards succeed to the inheritance by the civil law, at least in a limited manner, (and that is favorable to thó mother’s claim.) — 1 Domat. 45, 569.
*444 Jn enacting tlio statute of 1791» regulating descents,. and dividing the estate,? of iuteslates, the legislature have abandoned the rules of the common lave, and adopt', ed those of the civil law. Thus the half blood is let in to inheritances of real estate, contrary to the old feudal doctrine. So the preference of the paternal to the maternal line is given up, and they are put upon an equal footing. And the application of the civil Jaw principles, would permit the illegitimate to inherit from the mother, and the mother anu the relations of the illegitimate,"on the, maternal side, inherit from him.
In the great case of Edwards vs. Freeman, 2 P. Williams 441, the occasion of passing the statute of distributions, is stated by Sir Joseph Jekyl, the master of the rolls, have been, to put an end to the long, contest between the temporal ami spiritual courts; and was made in favor of the practice of the spiritual court, which made equal distribution among the children, agreeable to the civil law. And lord chancellor Hardwick says, in the case of Wallace vs. Hodson, 2 Atkins 115 and 117, that lie lakes it to be. fully s« tiled, that this act ja to be construed by 1 lie rules of the. civil law $ and the statute of 1 dar. 2d, into be construed in the same manner, being in continuance of the act of Charles 2d, with three additional clanc/ s.
All tiie judges of the Court of Appeals, (except judge. James,) after maturely deliberating on these cases- and the arguments of counsel, ordered and adjudged, that the decree of the circuit court, at Orangeburg1!, in the ease of Eleanor Jones vs. Burden, administrator of Burden, should be affirmed for the reasons given by judge Wattes, in the decree : And that the decree of the Circuit Court at. Camden, in the. case of Ann Barwick, r::. the Administrator of M. Gayle, should he reversed.
Chancellor James differed from his brethren la both cases'. *